FIRST NATIONAL BANK *v.* TISDIAL.

Opinion delivered June 16, 1924.

MORTGAGES—INDEBTEDNESS SECURED.—Under a mortgage to a bank which described the mortgagor's note to the bank and the mortgagor's note to a third person held by the bank as collateral security for such third person's indebtedness to it, referring to both notes as an indebtedness of the mortgagor to the bank, and reciting that the mortgage was given to secure such debt, *held*, where the third person paid his indebtedness to the bank and took up the collateral note, he was not entitled to share in the proceeds of a subsequent foreclosure sale, since the collateral note was not a debt due the bank at the time of foreclosure.

Appeal from Clay Chancery Court, Western District; *Archer Wheatley*, Chancellor; reversed.

*F. G. Taylor*, for appellant.

*Oliver & Oliver*, for appellee.

SMITH, J. William Reno was indebted both to the First National Bank of Corning and to F. M. Tisdial, and Tisdial was himself indebted to the bank, and he had indorsed Reno's note to himself to the bank as collateral to his own note. These notes of Reno were not paid at maturity, and both were renewed, but, before the renewal, Tisdial had agreed to sell to the bank the Reno note to himself. This sale was referred to as being conditional, and it was never consummated.

On March 2, 1920, the cashier of the bank prepared a mortgage conveying an eighty-acre tract of land from Reno to itself, the mortgage reciting a conveyance to the First National Bank, and unto its successors and assigns, forever. Reno's wife joined in the execution of the mortgage, and released to the bank all her rights of dower and homestead.

The mortgage recited the condition that, "whereas, William Reno and Minnie Reno are justly indebted unto the First National Bank of Corning in the sum of $2,364.42, evidenced by one promissory note dated February 5, 1920, for $1,961.52, due August 5, 1920, with ten per cent. interest from due; one note for $402.90,

made to F. M. Tisdial, and assigned by Tisdial to the First National Bank, dated March 2, 1920, and due December 2, 1920, with ten per cent. interest from date until paid."

A power of sale was granted, and it was provided that the proceeds of the sale should be applied, first, to the costs of the sale; second, "to the payment of said debt and interest," and the remainder, if any, to be paid to the grantor.

Tisdial paid his note to the bank, and, upon doing so, demanded and received from the bank the note to himself from Reno.

When the note from Reno to the bank matured it was not paid, and Reno executed to the bank a new mortgage, conveying the same land to secure the sum then due the bank, which included additional advances which had been made to Reno, and Reno also executed to the bank a chattel mortgage.

The indebtedness secured by this second mortgage was not paid at its maturity, and a suit was brought to foreclose it. The bank also foreclosed the chattel mortgage, and realized $798 from the sale of the personal property.

Tisdial lived just across the State line, in Missouri, but Corning was his trading point, and service was had against him by publication, and it was alleged in the complaint that "the defendant, Tisdial, claims a lien on said land by virtue of a mortgage, which this plaintiff states has been discharged." Tisdial filed no answer, and the decree of foreclosure recited that "defendant F. M. Tisdial, who claims a lien on said land, may intervene and file his claim for the same."

A commissioner was appointed to sell the land, and, at the sale made by him, the bank became the purchaser. In the meantime Reno had died, and Tisdial had entered into possession of the land under an agreement with Reno's widow, and had cultivated sixteen acres of the land in cotton.

At the term of the court at which the commissioner's report of sale came on for confirmation, Tisdial filed an intervention, in which he prayed that the decree of sale be set aside and that the mortgage dated March 2, 1920, be foreclosed, and that, out of the proceeds of the sale, the two notes there described be paid ratably. Testimony was taken on the issues there joined, and it was in this proceeding that the court found the rental value of the land, and rendered judgment therefor against Tisdial.

The court denied Tisdial the relief prayed, and confirmed the sale to the bank. The court also found that the rental value of the land during Tisdial's occupancy was $100, and charged this into the account which was stated.

The bank insists that the testimony shows that the rental value of the land was greater than that fixed by the court; but, without reviewing the testimony on this issue, we announce our conclusion that the court's finding on this question does not appear to be clearly against the preponderance of the evidence.

The bank was charged with the proceeds derived from the sale of the property sold under the chattel mortgage, and the court directed that the sum bid by the bank for the land, less the costs of the sale, be pro-rated between the bank and Tisdial in proportion to the amounts of the respective notes, and the bank has appealed from this decree.

The cashier of the bank testified that the mortgage on the land was taken for the sole purpose of securing the indebtedness due it, and that it was so prepared to secure any indebtedness due the bank at the time of the foreclosure, and that the note owned by Tisdial was included in the mortgage on the assumption that the bank had, in effect, acquired the title to the note, and was, or would be before its maturity, the owner thereof.

Tisdial testified that the mortgage was taken, not for the purpose alone of securing the indebtedness that might be due the bank at the time of the foreclosure, but

to secure also the note to his order executed by Reno and described in the mortgage.

We have concluded that the bank is correct in its contention, and that Tisdial is not entitled to a *pro rata* distribution of the proceeds of the commissioner's sale. The mortgage was to the bank alone, and we find no recitals in it which appear to contemplate that the bank was assuming the relation of trustee for Tisdial's benefit. There are no recitals which provide that Tisdial shall share in the proceeds of the sale. Tisdial was not made a grantee in the mortgage, and the conveyance was to the bank alone. The sum total of the notes is given, and it is referred to as a single indebtedness and as being owned by the bank. It is also recited that "this mortgage is also given to secure said bank for any and all other notes, or forms of indebtedness of whatsoever kind, that said bank may hold against the said William Reno, or any renewals or parts of renewals of the notes mentioned herein or held by said bank prior to foreclosure of this mortgage."

The Reno note to Tisdial was withdrawn from the possession of the bank at the time Tisdial paid his own note to the bank, and that note was not therefore a part of the indebtedness due the bank at the time of the foreclosure.

And if it be true—and we think it is—that the mortgage was intended to secure only the balance due the bank at the time of foreclosure, the Reno note to Tisdial was not secured by the mortgage, although it is described in it, because it ceased to be a part of the indebtedness due the bank when it was withdrawn from the bank's possession.

The court should not therefore have decreed that Tisdial be allowed to participate in the distribution of the proceeds of the commissioner's sale, and the decree to that effect is reversed, and the cause will be remanded with directions to the court to enter a decree in accordance with this opinion. It is so ordered.